UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARK A. PRICE,                        )
                                      )
                    Plaintiff         )
                                      )
        vs.                           )        CAUSE NO. 3:08-CV-34 RM
                                      )
MICHAEL A. DVORAK, *et al.*,          )
                                      )
                    Defendants        )

OPINION AND ORDER

In his amended complaint, *pro se* plaintiff Mark Price has alleged that he was the victim of a conspiracy by three governmental employees of St. Joseph County (Michael Dvorak, Joseph Nagy, and Tim Corbett) and several non-governmental defendants (Robert Urbankski, Natakit Buraprteep, Robert McElwee, Key Bank National Association, Christopher Riley, and Mitchell Heppenheimer) in violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962. All of the defendants, with the exception of Mr. Urbanski and Mr. Buraprateep, have moved to dismiss Mr. Price's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Urbanski and Mr. Buraprateep separately moved for summary judgment on the claims asserted against them. For the reasons set forth below, the court grants those motions.

The following facts are based upon Mr. Price's allegations. They are recited only for purposes of resolving this motion and are taken in the light most favorable to him as legally possible. At all times relevant to his complaint, Mr. Price was the principal of construction contractor Thermotech Services. In 2005, Thermotech entered into a contract with Nat Corp. to provide construction services associated with the remodeling of a South Bend restaurant. Key Bank financed the project. In early 2006, Key Bank representative Bob McElwee notified Mr. Price that Key Bank would no longer be releasing construction funds unless Nat Corp. could provide proof of additional funding. In March 2006, Nat Corp. and Thermotech entered into an addendum of their 2005 contract so that Key Bank would release additional construction funds.

The project continued to experience funding issues, and Nat Corp. notified Mr. Price that it was seeking additional investors. On May 10, 2006, Mr. Price attended a meeting where he was introduced to the owners of Target Leasing, John Martell and Robert Urbanski. Mitchell Heppenheimer, the attorney for Target Leasing, Mr. McElwee, and Key Bank attorney Christopher Riley. At this meeting, Natakit Buraprateep, on behalf of Nat Corp., and Mr. McElwee, on behalf of Key Bank, told Mr. Price that the meeting's purpose was to have Mr. Price answer the potential investors' questions about construction and for Mr. McElwee to answer any questions in regards to financing. Mr. Price didn't attend the second half of the meeting related to financing.

After the meeting, on May 23, Mr. Urbanski presented a release to Mr. Price that cleared all previous agreements in place between Nat Corp. and Thermotech and indicated that Key Bank would provide one additional release to finalize the transaction with Target Leasing. Mr. Price signed this additional release on June 5, and Mr. Urbanski took over management of the project's day to day operations.

In mid-June, a dispute arose between Mr. Urbanski, Mr. Price, and Mr. Buraprateep about building materials used on the job site. According to Mr. Price, Mr. Urbanski asked him to provide additional materials that he believed were purchased by Target Leasing at the time of closing. Mr. Price disagreed, and Mr. Urbanski offered to provide a deposit for the materials, which Mr. Price claims that he never received. Mr. Price says that Mr. Urbanski directed materials to be sent to the job site and charged them to Mr. Price's account without his permission. In response, Mr. Urbanski stated that Mr. Price was paid before Target Leasing purchased the project and that the releases signed before the closing cleared any commitments to Mr. Price. In early July, Mr. Urbanski fired Mr. Price from the project.

According to Mr. Price, on July 11, Mr. Urbanski insisted that Mr. Price owed additional tile and threatened to have him arrested for theft of materials from the project "because he had friends in the prosecutor's office." Amended Complaint at ¶ 35. Mr. Price further claims that Mr. Urbanski threatened not to pay the suppliers as the releases provided. On this same day, Mr. Price discovered that he was still listed as the contractor of record and that the project's ownership hadn't changed from Nat Corp. to Target Leasing, despite the alleged

representations by Mr. McElwee, Mr. Riley, Mr. Urbanski, and Mr. Buraprateep. Mr. Price cancelled his building permit and filed a mechanic's lien against the project.

Two days later, on July 13, Officer Tim Corbett, a police commander with the St. Joseph County Prosecutor's Office, County Metro Homicide Unit, visited Mr. Price at his father's home, where Mr. Price was doing some construction work. Officer Corbett presented himself at the front door of the home with badge and gun in view, and Mr. Price's father allowed him to enter. According to Mr. Price, Officer Corbett told him that he needed to comply with Mr. Urbanski's demands, or he would go to jail. Mr. Price asked Officer Corbett for information about Mr. Urbanski's demands, but Officer Corbett conveyed that he didn't know anything about the details of the matter and would return with a list of demands from Mr. Urbanski.

Mr. Price notified the South Bend Police Department about Officer Corbett's visit and learned that Corbett was a commander of the homicide unit, not a city police officer. On July 15, Mr. Price went to the St. Joseph County Sheriff's office to communicate with Officer Corbett and was told that Officer Corbett would visit him the next Monday. Mr. Price claims that he was frightened and tried to file a complaint against Officer Corbett with the Sheriff's office, but he was told that any complaints needed to be filed with the prosecutor's office. Mr. Price says that he was intimidated to go to the prosecutor's office because of his previous conversations with Officer Corbett, so Chief John Botich with the Sheriff's office offered to deliver a complaint on Mr. Price's behalf. Mr. Price met with Chief Botich

again on July 18 and provided him with a complaint to deliver to the prosecutor's office.

A few days later, Nancy Sulok, a reporter with the South Bend Tribune, contacted Mr. Price about Officer Corbett's visit. On July 20, Mr. Price read an article published by Ms. Sulok in the Tribune, which reported that Mr. Urbanski believed that Mr. Price had stolen materials from him. Mr. Urbanski stated that he contacted Joseph Nagy, a friend in the prosecutor's office, who suggested that he call Tim Corbett. Ms. Sulok's later articles stated that St. Joseph County Prosecutor Michael Dvorak investigated the matter by asking for written reports from both Mr. Nagy and Officer Corbett and issued one-day suspensions to both for failing to follow proper procedures.

Following the publication of Ms. Sulok's initial article, Mr. Buraprateep filed an incident report for larceny against Mr. Price on July 21, and on July 27, Mr. Buraprateep filed a civil complaint for replevin in the St. Joseph County Superior Court. Both claims allege that Mr. Price took materials from the project site. Key Bank intervened in the replevin suit, and Mr. Buraprateep gave deposition testimony regarding the details of the May 10 meeting and the subsequent releases.

On March 6, 2007, Mr. Price made a request for access to public records about the incident with Officer Corbett and received a response from the prosecutor's office three days later. This response contained the complaint filed by Chief Botich on behalf of Mr. Price and a memorandum written by Mr. Dvorak to Ms. Sulok in response to her inquiry about the status of his investigation into

the matter. The memorandum states that Mr. Dvorak "concluded that this matter was not handled in accordance with office policies." The prosecutor's office also provided Mr. Price with a copy of the disciplinary action notice that was issued to Officer Corbett as well a statement that Mr. Nagy was given verbal notice of his discipline. After reviewing these materials, Mr. Price sent a certified letter to Mr. Dvorak asking that "he intervene in the matter" because Mr. Price believed that his civil rights had been violated. Mr. Dvorak never responded to Mr. Price's letter.

Mr. Price sent letters to the members of the St. Joseph County Council and the St. Joseph County Commissioners alleging that: 1) Mr. Urbanski made false statements to enlist the help of the prosecutor's office; 2) Officer Corbett tried to extort materials from him; 3) Mr. Dvorak refused to investigate his accusations and covered up Officer Corbett's actions by describing the incident as a violation of office policy; 4) Mr. Price attempted to file charges against Officer Corbett but neither the South Bend Police Department nor the St. Joseph County Police investigated the issue; and 5) the prosecutor's office failed to contact him regarding his complaint.

Mr. Price's amended complaint recounts these same allegations, asserting seven causes of action against both the governmental defendants, Mr. Dvorak, Mr. Nagy, and Officer Corbett, as well as against the non-governmental defendants, Mr. Urbanski, Mr. Buraprateep, Mr. McElwee, Mr. Riley, Mr. Heppenheimer, and Key Bank. Specifically, Mr. Price claims that the defendants violated his constitutional and statutory rights in connection with the construction dispute and the prosecutor's office's involvement in the dispute. All of the defendants, with

the exception of Mr. Urbanski and Mr. Burprateep, have moved to dismiss Mr.

Price's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and the

remaining two defendants have moved the court for summary judgment on the

claims against them.


MOTIONS TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

complaint's sufficiency, not its underlying merits. *See* Gibson v. City of Chicago,

910 F.2d 1510, 1520 (7th Cir. 1990); *see also* Caremark, Inc. v. Coram Healthcare

Corp., 113 F.3d 645, 648 (7th Cir. 1997) ("The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims") (citation omitted). In ruling on a motion to dismiss, the court must

accept as true all well-pleaded allegations and draw reasonable inferences in favor

of the plaintiff. Flannery v. Recording Indus. Ass'n of Am., 354 F.3d 632, 637 (7th

Cir. 2004). Dismissal under Rule 12(b)(6) is proper only if it appears beyond doubt

that the plaintiff can prove no set of facts entitling him to relief. Szumny v. Am. Gen.

Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

A complaint suffices if any facts consistent with its allegations could be

established by affidavit or testimony at a trial. Doe v. Smith, 429 F.3d 706, 708

(7th Cir. 2005) (quotations and citations omitted). Federal Rule of Civil Procedure

8(a)(2) requires that the complaint contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s

requirements, the complaint must provide enough detail to give the defendant fair

notice of the plaintiff's claim and the grounds upon which it rests. <u>Bell Atlantic Corp. v. Twonbly</u>, __ US __, 127 S. Ct. 1955, 1964 n.3 (2007) (*quoting* <u>Conley v. Gibson</u>, 355 US 41, 47 (1957)). These allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." <u>E.E.O.C. v. Concentra Health Serv., Inc.</u>, 496 F.3d 773, 770 (7th Cir. 2007). The court construes the allegations of a *pro se* complaint generously. <u>Haines v. Kerner</u>, 404 U.S. 519 (1974).

### *(A) Section 1983 Claims*

In his amended complaint, Mr. Price alleges five causes of action under 42 U.S.C. § 1983. To maintain a claim under § 1983, a plaintiff must demonstrate that a government official, acting under color of state law, violated his constitutionally protected rights. <u>Bennett v. Roberts</u>, 295 F.3d 687, 699 (7th Cir. 2002) (*citing* <u>Stagman v. Ryan</u>, 176 F.3d 986, 999 (7th Cir. 1999)); *see also* <u>Reynolds v. Jamison</u>, 488 F.3d 756, 764 (7th Cir. 2007). Count I asserts that Mr. Urbanski, Mr. Nagy, Officer Corbett, and Mr. Dvorak conspired against Mr. Price in violation of his Fourteenth Amendment right to due process under the law. Similarly, Count III alleges that Mr. Urbanski, Mr. Nagy, and Officer Corbett violated Mr. Price's First Amendment rights by participating in a scheme to prevent him from seeking redress for the alleged violation of his rights. Mr. Price asserts Counts IV through VI against Mr. Dvorak, contending that he violated Mr. Price's constitutional rights to free speech, to challenge authority, and to equal

protection under the law in connection with his investigation and discipline of Mr. Nagy and Officer Corbett as employees of the prosecutors' office.

### (i) Claims against Mr. Dvorak

Mr. Price asserts four causes of action under § 1983 against Mr. Dvorak in both his individual capacity and his official capacity as county prosecutor for St. Joseph County, Indiana. In Count I, Mr. Price claims that Mr. Dvorak violated his right to due process as guaranteed by the Fourteenth Amendment when he told South Bend Tribune reporter Nancy Sulok that he had "fully reviewed" the incident involving Mr. Nagy and Officer Corbett, but didn't provide Mr. Price the opportunity to make a statement. Count IV asserts that Mr. Dvorak's refusal to intervene or "acknowledge repeated attempts by plaintiff to question what occurred" violated Mr. Price's First Amendment right to challenge authority, and Count V alleges a First Amendment claim against Mr. Dvorak for making misleading statements to the press and preventing Mr. Price from publicly criticizing the prosecutor's office. Finally, Count VI states a claim against Mr. Dvorak for violation of Mr. Price's right to equal protection as guaranteed by the Fourteenth Amendment.

In his motion to dismiss Mr. Price's amended complaint, Mr. Dvorak argues that the claims against him should be dismissed because, as a prosecutor, he enjoys absolute immunity from liability under § 1983. While prosecutors enjoy absolute immunity for core prosecutorial functions such as initiating criminal proceedings, absolute immunity is limited to acts taken within the scope of

prosecutorial duties. _See_ Levy v. Pappas, 510 F.3d 755, 764 (7th Cir. 2007) (_citing_ Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). "A prosecutor is shielded by absolute immunity when he acts 'as an advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings." Smith v. Power, 346 F.3d 740, 742 (7th Cir. 2003) (_citing_ Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). Mr. Price challenges Mr. Dvorak's actions in connection with his investigation of his employees' alleged misconduct and the manner in which discipline was imposed upon these employees. Because Mr. Dvorak's conduct wasn't taken in connection with his duties in prosecuting a criminal case, he isn't entitled to absolute immunity for his conduct.

Mr. Dvorak still may be entitled to qualified immunity, which shields government officers performing discretionary functions from civil litigation. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The court undertakes a two-part inquiry in determining whether qualified immunity shields a public official from a § 1983 action. _See_ Mannoia v. Farrow, 476 F.3d 453, 457 (7 Cir. 2007) (_citing_ Saucier v. Katz, 533 U.S. 194, 201 (2001)). First, the court must consider whether Mr. Price adequately alleges facts that, if true, would constitute a constitutional violation. _See_ id; _see also_ Carvajal v. Dominguez, 542 F.3d 561, 566 (7th Cir. 2008). If so, the court inquires whether the constitutional right "was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions are in violation of that right." Mannoia v. Farrow, 476 F.3d at 457.

_Due Process Claim._ In Count I of the amended complaint, Mr. Price argues that Mr. Dvorak reviewed the incident involving Mr. Nagy and Officer Corbett but

refused to intervene on Mr. Price's behalf and didn't allow him the opportunity to give a statement, purportedly violating his right to due process as provided by the Fourteenth Amendment. Even when taken in the light most favorable to Mr. Price, these facts don't form the basis of a civil rights action. The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. Buttita v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir. 1993). To establish a due process violation, Mr. Price must allege: (1) the existence of a cognizable property interest, (2) a deprivation of that interest, and (3) a denial of due process. Licari v. City of Chicago, 298 F.3d 664, 668 (7th Cir. 2002) (*citing* Schroeder v. City of Chicago, 927 F.2d 957, 959 (7th Cir. 1991)). A property interest isn't constitutionally cognizable unless a person has a "legitimate claim of entitlement" to the benefit at issue. Buttita v. City of Chicago, 9 F.3d at 1202. Only after the plaintiff has established a protectible interest by showing that he suffered an atypical and significant hardship will the court consider what process was due. *See* Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005).

Mr. Price's amended complaint doesn't suggest that Mr. Dvorak's refusal to intervene on his behalf deprived him any cognizable property or liberty interest. For example, Mr. Price hasn't suggested any reason to think that Mr. Dvorak's failure to obtain a statement from him regarding the Corbett incident in any way affected his previously filed mechanic's lien, his ability to defend himself in the related state court actions, his filing of a complaint with the prosecutor's office, or his ability to pursue the present case. Nor has Mr. Price suggested a

deprivation of any benefit to which he was entitled to receive. Therefore, Mr. Price hasn't adequately alleged a viable due process claim against Mr. Dvorak.

*First Amendment Claims.* In Count IV of the amended complaint, Mr. Price contends that Mr. Dvorak's refusal to acknowledge his attempts to raise questions about the Corbett incident violated his First Amendment right to challenge authority. In Count V, Mr. Price maintains that Mr. Dvorak's allegedly misleading statements to the press prevented him from publicly presenting information that would have been critical of the prosecutor's office in violation of his First Amendment right to free speech. The allegation that Mr. Dvorak gave inaccurate information to the press doesn't implicate any liberty or property interests sufficient to constitute a violation of his constitutional rights. *See generally* Paul v. Davis, 424 U.S. 693 (1976). In addition, Mr. Price says that he intended to disclose the threats and intimidation on the part of Mr. Urbanski, Mr. Nagy, and Officer Corbett, thereby speaking on a matter of public concern, so (as Mr. Price sees it) his statements are entitled to First Amendment protection. Despite these allegations, Mr. Price asserts nothing to suggest that Mr. Dvorak's conduct prevented him from exercising his rights to free speech or that Mr. Dvorak retaliated against him for exercising those rights. *See e.g.,* Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004) (holding that speech by a citizen on a matter of public concern may be protected by the First Amendment). Mr. Price doesn't contend that he actually engaged in constitutionally protected speech and suffered an actual injury as a result. Mr. Price, hasn't adequately alleged facts to state a

claim that Mr. Dvorak's actions stifled his speech in violation of the First Amendment.

*Equal Protection Claim.* Finally, in Count VI of the amended complaint, Mr. Price claims that Mr. Dvorak discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment by giving preferential treatment to "some citizens" over others. To establish a prima facie case of discrimination under the equal protection clause, Mr. Price is required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993) (*citing* McMillian v. Svetanoff, 878 F.2d 186, 189 (7th Cir. 1989)). Mr. Price cannot make out a prima facie case based on the argument that he is a member of a protected class. While he argues that the prosecutor's office "allows one citizen to seek redress through the prosecutor's office while others are forced to use the courts," he doesn't detail the identity of the citizens that are so deprived or how he is a member of this undefined class. Instead, Mr. Price supports his claim by arguing that he is a member of a "class of one."

Where "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him, the individual ought to have a remedy in federal court." Esmail v. Macrance, 53 F.3d 176, 179 (7th Cir. 1995) (citing the defendant's "orchestrated campaign of official harassment" as support for the plaintiff's cognizable equal protection claim). "Although '[t]ypically equal protection claims involve charges of

singling out members of a vulnerable group for unequal treatment or charges that a law or policy makes irrational distinctions between groups of people . . . equal protection claims may also involve a 'class of one,' where the plaintiff alleges that only he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *See* Cvicker v. Meyer, 2007 WL 870125, at *18 (E.D. Wis. Mar. 20, 2007) (*quoting* Bell v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004)). The "class of one" plaintiff bears the burden of proving he has suffered intentional, irrational, and arbitrary discrimination. *See* id.

Mr. Price contends that Mr. Dvorak singled him out by selectively enforcing the policies of the prosecutor's office to his detriment. To prove an equal protection claim based on a "class of one" theory, Mr. Price must also prove that Mr. Dvorak acted with discriminatory purpose to treat him differently than other groups of similarly situated individuals. *See* Chavez v. Illinois State Police, 251 F.3d 612, 645 (7th Cir. 2001). Mr. Price hasn't alleged any facts suggesting that he was treated differently than any other similarly situated individual requesting action from the prosecutor's office. Further, Mr. Price hasn't presented facts to suggest that Mr. Dvorak was acting with discriminatory purpose. Mr. Price's amended complaint isn't sufficient to support an inference of disparate treatment, so he cannot state a cognizable equal protection claim.

Because Mr. Price hasn't adequately alleged facts which form the basis of a constitutional violation of his rights to due process, free speech, or equal protection, Mr. Dvorak is entitled to qualified immunity on Mr. Price's claims

against him. As such, the court dismisses Counts I, IV, V, and VI of the amended complaint as against Mr. Dvorak.

*(ii) Conspiracy claims against Mr. Urbanski, Mr. Nagy, and Officer Corbett*

Count I of Mr. Price's amended complaint alleges that Mr. Nagy, Officer Corbett, and Mr. Urbanski conspired against him "to prevent due process of plaintiff to seek redress of lien and contract dispute in court" in violation of his right to due process as guaranteed by the Fourteenth Amendment. Count III asserts a claim against the same defendants for participating in a scheme to prevent Mr. Price from seeking redress in a court of law in retaliation for "the filing of a lien and for removing his building permits after he was fired" in violation of his First Amendment rights. The governmental defendants move to dismiss these claims, arguing that Mr. Price hasn't stated a valid conspiracy claim under § 1983.

"To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and a private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant(s) in joint activity with the State or its agents." <u>Reynolds v. Jamison</u>, 488 F.3d at 764 (*citing* <u>Williams v. Seniff</u>, 342 F.3d 774, 785 (7th Cir. 2005)). To sustain a claim that the defendants conspired to deny Mr. Price his constitutional rights, "[t]here must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding." <u>Amundsen v. Chicago Park Dist.</u>, 218 F.3d 712, 718 (7th Cir. 2000). "Vague and conclusory allegations of the existence of a conspiracy are

not enough to sustain a plaintiff's burden;" there must be some factual allegations suggesting that the defendants reached a meeting of the minds. Evers v. Reak, 21 Fed. Appx. 447, 450 (7th Cir. 2001) (holding that merely asserting that a conspiracy existed did not fulfill the plaintiff's burden to state a claim under § 1983).

Although Mr. Price makes several allegations about the defendant's purported conspiracy, he doesn't provide any factual support indicating the existence of an agreement between the county officials and private actor Urbanksi or any details as to what, when, why, or how the supposed agreement deprived him of his constitutional rights. *See* Brokaw v. Mercer Cty, 253 F.3d 1000, 1016 (7th Cir. 2000). Mr. Price makes no factual allegations supporting a reasonable inference that the defendants agreed to any sort of conspiracy; he provides no details of any overt acts reasonably related to the promotion of the alleged conspiracy. Instead, Mr. Price suggests that Mr. Urbanski called Mr. Nagy, and Mr. Nagy suggested to Mr. Urbanski that Officer Corbett contact Mr. Price, as learned through the newspaper articles Ms. Sulok wrote. This evidence alone doesn't suggest that the defendants reached a meeting of the minds regarding Mr. Price. As such, Mr. Price's allegations are insufficient to state a claim that the defendants conspired to deprive him of his constitutional rights to due process and freedom of speech.

In addition to the lack of specificity in the conspiracy allegations, Mr. Price hasn't shown that he suffered an injury for which the Constitution provides a remedy. State actors are prohibited from impeding a party's access to the courts;

to state a claim, however, Mr. Price must allege that "state action hindered his . . . efforts to pursue a nonfrivolous legal claim and that consequently [he] suffered some actual concrete injury." *See* <u>May v. Sheahan</u>, 226 F.3d 876, 882 (7th Cir. 2000). Inconvenience or delay aren't sufficient to establish such an injury; instead, Mr. Price must allege facts indicating that he was "prevented from pursuing his claims in a court or that the value of [his] claims was significantly reduced as a result of Defendants' conduct." <u>Farrar v. Yamin</u>, 261 F. Supp. 2d 987, 991 (N.D. Ill. 2003).

Mr. Price alleges no facts indicating that his mechanic's lien was affected or that he wasn't able to properly defend the replevin action in state court. Mr. Price doesn't suggest that he was prevented in any way from pursuing a contract dispute regarding the ownership of the tile and other materials at issue. Although Mr. Price concludes that Officer Corbett restrained his freedom of movement, he doesn't suggest that Officer Corbett arrested, searched, or detained him in any way. Further, Mr. Price was able to file his complaint with the prosecutor's office, and Mr. Dvorak reviewed that complaint, as demonstrated by the issuance of discipline against Officer Corbett and Mr. Nagy. Mr. Price hasn't sufficiently alleged that the defendants hindered the pursuance of his claims or that he actually suffered injury as a result of their actions. The court dismisses Counts I and III as against Mr. Urbanski, Mr. Nagy, and Officer Corbett.

*(B) Section 1985 Claim*

Count II of the amended complaint seeks to state a claim against Mr. Urbanski, Mr. Nagy, and Officer Corbett under 42 U.S.C. § 1985(3) for "employ[ing] a scheme to prevent plaintiff's right to seek redress in his claim." Section 1985(3) provides in relevant part: "[i]f two or more persons in any state or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1983(3). To maintain a claim under § 1985(3), a plaintiff must allege: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." Brokaw v. Mercer Cty, 235 F.3d at 1024 (*citing* Majeske v. Fraternal Order of Police, Local Lodge No. 7, 94 F.3d 307, 311 (7th Cir. 1996)). To establish that the conspiracy's purpose is to "deprive a person or class of persons of equal protection of the laws," the plaintiff must allege "some racial, or perhaps otherwise, class-based invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). "[C]lass based invidiously discriminatory animus" includes "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." Vok v. Coler, 845 F.2d 1422, 1434 (7th Cir. 1988).

As with his equal protection claim against Mr. Dvorak, Mr. Price hasn't alleged that he is a member of a protected class. The amended complaint contains

no allegations as to Mr. Price's race, sex, age, heritage, religion, or political affiliation. Even if Mr. Price could suggest a class-based discriminatory motive, Count II of the amended complaint doesn't allege enough facts to support a claim under § 1985(3). A § 1985 complaint must indicate the parties, the general purpose, and approximate date of the agreement to form a conspiracy so that the defendant has notice of the charges against him. Walker v. Thompson, 288 F.3d 1005, 1007 (7th Cir. 2002). Mr. Price's conspiracy allegations vaguely assert that Mr. Nagy recommended Officer Corbett to Mr. Urbanski as an officer that would be willing to intimidate Mr. Price. Mr. Price hasn't indicated where, when, or how Mr. Urbanski spoke to Mr. Nagy, or that Mr. Nagy ever had any contact with Officer Corbett. Indeed, the amended complaint makes no indication as to any specific conduct by Mr. Nagy, but rather, Mr. Price maintains only that he read about Mr. Urbanski's version of events and Mr. Dvorak's later investigation as detailed in the newspaper articles by Ms. Sulok. These bare allegations of a conspiracy are not enough to enable Mr. Nagy and Officer Corbett to prepare a defense or for the court to determine whether the amended complaint alleges a potentially valid conspiracy claim. *See* id. at 1007-1008. The court dismisses Count II of the amended complaint as against Mr. Urbanski, Mr. Nagy, and Officer Corbett.


### (C) RICO Claims

Count VII of the amended complaint asserts a RICO claim against Mr. Urbanski, Mr. Buraprateep, Mr. McElwee, Mr. Riley, and Mr. Heppenheimer for

conspiring to "defraud plaintiff and illegally acquire property" through various predicate acts, including: defamation, invasion of privacy, intimidation, misleading conduct, extortion, theft by deception, intentional infliction of emotional distress, and cruel and unusual punishment. Mr. McElwee, Key Bank[1], Mr. Riley, and Mr. Heppenheimer all moved to dismiss this claim, arguing that Mr. Price's allegations are facially deficient because they don't satisfy the essential elements of a RICO cause of action.

The RICO Act prohibits various forms of infiltration of legitimate business "enterprises" involved in interstate commerce through a "pattern of racketeering activity." 18 U.S.C. § 1962. In particular, "RICO renders criminally and civilly liable 'any person' who uses or invests income derived 'from a pattern of racketeering activity' to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise 'through a pattern of racketeering activity,'" § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs 'through a pattern of racketeering activity,'" § 1962(c); or finally, who conspires to violate the first three subsections of § 1962, § 1962(d)." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 232-233 (1989).

---

[1] Mr. Price makes no allegations toward Key Bank itself, but Key Bank joins in Mr. McElwee's motion to dismiss, claiming that it should be dismissed from the suit for the same reasons.

"In order to state a viable cause of action under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[2] Slaney v. The Int'l Amateur Athletic Fed'n, 244 F.3d 580, 597 (7th Cir. 2001). The RICO statute requires that a plaintiff allege the commission of at least two "predicate acts," a "continuity" of acts establishing a pattern of racketeering conduct, the existence of a criminal "enterprise," and the defendants' "control" of that enterprise. Id. Mr. Price's amended complaint is legally insufficient because it doesn't satisfy these prongs.

*(i) Pattern of racketeering activity*

To satisfy the requirement of pleading a "pattern" of racketeering activity, Mr. Price must demonstrate "at a minimum, two predicate acts of racketeering." Id. at 598-599. "A predicate act must be one of the specifically identified acts of racketeering listed in 18 U.S.C. § 1961," which defines "predicate act" solely by reference to federal statute. Gagan v. Am. Cablevision, Inc., 77 F.3d 951, 958 (7th Cir. 1996). Even read generously and taken in the light most favorable to Mr. Price, none of the predicate acts alleged in Count VII constitute actionable conduct under RICO.

---

[2] Mr. Price doesn't specify under which subsection of § 1962 his claim arises. Subsections (a) and (b) both require that the defendant acquire an interest in an enterprise engaged in interstate commerce. 18 U.S.C. § 1962 (a)-(b). Mr. Price doesn't make any allegations to this effect, so he hasn't asserted a claim under these subsections. Therefore, the court considers Mr. Price's claims pursuant to both § 1962(c) and (d).

Mr. Price claims that Mr. Riley produced a misleading release, filed a motion to intervene in the state court replevin action but omitted relevant loan documents, and knowingly remained silent in the state court suit when he was aware that false statements were being made regarding the alleged mediation. As to Mr. Heppenheimer, Mr. Price alleges that he introduced himself as a friend and attorney at the May 10, 2006 meeting, notarized a false statement by Mr. Buraprateep, participated in characterizing the May 10 meeting as a "mediation" at Mr. Buraprateep's deposition, drafted a list of items for the state court replevin case, and "filed bogus lawsuits and misleading statements to harass" Mr. Price. Finally, Mr. Price claims that Mr. McElwee misleadingly represented to him that the property at issue was being sold to Mr. Urbanski, knowingly participated in the state court replevin suit, and misrepresented payments from Key Bank to Mr. Buraprateep. Mr. Price lists these allegations under the heading "misleading conduct," but this claim isn't identified as an act of racketeering listed in § 1961. Similarly, Mr. Price alleges a predicate act of "intentional infliction of emotional distress" against all of the RICO defendants, but this claim isn't included in the list of predicate acts in § 1961. Because Mr. Price alleges no conduct by Mr. Riley, Mr. Heppenheimer, Mr. McElwee, or Key Bank sufficient to constitute a pattern of racketeering activity, he fails to state a cognizable RICO claim against these defendants.

*(ii) Continuity*

In addition to pleading two predicate acts, "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. at 240, 242 ("[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct."); Jennings v. Emry, 901 F.2d 1434, 1439 (7th Cir. 1990) ( "[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct – one indicating the threat of continuing criminal activity – reasonably may be inferred.").To establish continuity, a plaintiff must demonstrate that the predicate acts are not random or isolated events, but are interrelated with respect to such factors as purpose, results, participants, or victims. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. at 240; Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir. 1986) (noting that relevant factors for establishing continuity include: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.").

Even if Mr. Price's alleged "predicate acts" qualified as RICO predicate acts under § 1961 (and they don't), he hasn't asserted any facts to suggest that these acts constitute a threat of continuing racketeering activity. At best, Mr. Price alludes to one scheme, aimed at a single victim, involving few acts, and taking place over a period of approximately six months. These facts don't allow an inference of the requisite pattern of long-term criminal conduct necessary to

suggest the existence of a genuine threat of continued criminal activity. *See, e.g.,* J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 821 (7th Cir. 1991) (holding that the alleged scheme to defraud did not demonstrate a pattern of racketeering activity). For this reason, Count VII is insufficient to state a RICO claim. *See* Wade v. Hopper, 993 F.2d 1246, 1251 (7th Cir. 1993) (dismissing RICO claim where the plaintiffs alleged a single scheme directed at a single victim and resulting in a single injury).

*(iii) Enterprise*

To proceed under § 1962, a RICO complaint must also identify an "enterprise." Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (*citing* Jennings v. Emry, 910 F.2d at 1439-1440); Otto v. Variable Annuity Life Ins. Co., 814 F.2d 1127, 1136 (7th Cir. 1986). An enterprise "must be more than a group of people who get together to commit a 'pattern of racketeering activity' . . . and more than a group of associated businesses that are 'operated in concert' under the control of one family." Richmond v. Nationwide Cassel L.P., 52 F.3d at 645 (internal citations omitted). Indeed, the "hallmark of an enterprise is a 'structure' . . . [t]here must be 'a structure and goals separate from the predicate acts themselves.'" Id. (internal citations omitted). "There must also be 'a common purpose of engaging in a course of conduct, although the motive for the enterprise need not be an economic one." Id. (internal citations omitted).

Count VII of Mr. Price's amended complaint includes a number of independent individuals who allegedly wronged him in different ways. Mr. Price

doesn't identify how these individuals are related or how their alleged efforts were structured or coordinated. While he presents limited facts regarding the acts in question, Mr. Price doesn't explain how these acts comprised a common course of conduct or whether the defendants were pursuing goals separate from the acts themselves. This "nebulous, open-ended description of the enterprise does not sufficiently identify this essential element of the RICO offense." *See* id; *see also* Limestone Dev. Corp. v. Village of Lemont, Illinois, 520 F.3d 797, 804 (holding that there was no enterprise established were "[n]owhere in the complaint does one find anything to indicate a structure of any kind. There is no reference to a system of governance, an administrative hierarchy, a joint planning committee, a board, a manager, a staff, headquarters, personnel having differentiated functions, a budget, records, or any other indicator of a legal or illegal enterprise."). As such, Mr. Price doesn't adequately identify the "enterprise" upon which his RICO claim focuses, and so doesn't state a claim for relief under § 1962(c).

*(iv) RICO conspiracy*

Count VII of the amended complaint states no conspiracy claim under § 1962(d). To state a conspiracy claim under § 1962(d), a plaintiff must allege that: "(1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." Lachmund v. ADM Investor Servs.,

Inc., 191 F.3d 777, 784 (7th Cir. 1999) (*citing* Goren v. New Vision Int'l, Inc., 156 F.3d 721, 732 (7th Cir. 1998)). While the complaint needn't allege that each defendant personally agreed to commit two predicate acts, it must allege that each defendant agreed to participate in an endeavor which, if completed, would constitute a violation of RICO. Id. at 731-732.

Mr. Price's amended complaint doesn't plead any facts indicating an agreement by the defendants as to which roles they would play in the enterprise or any agreement by the defendants that someone would commit two specific predicate acts on behalf of the enterprise and in furtherance of the conspiracy. *See* id. at 732 (affirming dismissal of the plaintiff's complaint due to failure to adequately allege a RICO conspiracy). Absent such particular pleadings, Mr. Price's complaint contains "nothing more than 'conclusory, vague and general allegations of a conspiracy' that are insufficient to state a claim under § 1962(d)." Lachmund v. ADM Investor Servs., Inc. 191 F.3d at 785 (*citing* Goren v. New Vision Int'l, Inc., 156 F.3d at 733).

Because the complaint doesn't state a claim under either § 1962(c) or (d), the court dismisses Count VII of Mr. Price's amended complaint as against Mr. Riley, Mr. McElwee, Key Bank, and Mr. Heppenheimer.


SUMMARY JUDGMENT MOTION

Mr. Urbankski and Mr. Buraprateep have moved the court for summary judgment on Mr. Price's claims against them. Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

In their summary judgment motion, Mr. Urbanski and Mr. Buraprateep join in the governmental and non-governmental defendants' arguments in support of dismissal. They also argue that summary judgment is appropriate because Mr. Price hasn't presented sufficient evidence to create a genuine issue of fact for trial. Mr. Urbanski reiterates the governmental defendants' argument that the § 1983 claims asserted in Counts I, II, and III don't contain allegations necessary to demonstrate that Mr. Urbanski reached an understanding with Mr. Nagy and Officer Corbett in regards to the alleged conspiracy against Mr. Price. *Citing*

Amundsen v. Chicago Park Dist., 218 F.3d at 718. Further, Mr. Urbanski maintains that Mr. Price hasn't articulated a property interest at stake or that the defendants' actions resulted in a constitutional deprivation. *Citing* Licari v. City of Chicago, 298 F.3d at 668; Brokaw v. Mercer Cty, 235 F.3d at 1016. In fact, in Mr. Price's brief in response to the motion for summary judgment, he admits that it's not clear from the record if Mr. Nagy actually sent Officer Corbett to visit Mr. Price and that the details of the conspiracy are "unknown."

Finally, Mr. Urbanski and Mr. Buraprateep reiterate the non-governmental defendants' arguments in support of dismissal on Count VII. In particular, none of the conduct attributed to Mr. Urbanski and Mr. Buraprateep – defamation, invasion of privacy, intimidation, misleading conduct, extortion, theft by deception, and intentional infliction of emotional distress – are brought under the federal statutes specifically defined as RICO predicate acts in § 1961. In addition, Mr. Price doesn't present any facts to satisfy the continuity and enterprise requirements of § 1962(c) or the structure requirement of § 1962(d).

For the reasons already stated, the court agrees that Mr. Price hasn't stated a cause of action under § 1983 or § 1985 against Mr. Urbanski. Likewise, the RICO allegations against Mr. Urbanksi and Mr. Buraprateep don't adequately state a claim for relief under § 1962. Mr. Price hasn't presented evidence sufficient to create a genuine issue of material fact on the claims against Mr. Urbanski and Mr. Buraprateep. Accordingly, the defendants are entitled to summary judgment on Counts I, II, III, and VII against Mr. Urbanski  and Count VII against Mr. Buraprateep.

CONCLUSION

For the foregoing reasons, the court GRANTS the motions to dismiss by the governmental defendants [Doc. No. 42], Key Bank and Mr. McElwee [Doc. No. 60], Mr. Riley [Doc. No. 64], Mr. Heppenheimer [Doc. No. 73]. The court also GRANTS Mr. Urbanski's and Mr. Buraprateep's motion for summary judgment [Doc. No. 68].

SO ORDERED.

Entered:  <u>March 12, 2009</u>

<u>    /s/ Robert L. Miller, Jr.      </u>
Chief Judge
United States District Court